**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HARTFORD CASUALTY INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PEERLESS INSURANCE COMPANY, THE NETHERLANDS INSURANCE COMPANY, UNIVERSAL UNDERWRITERS INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY,**<br><br>**Defendants.** | Civ. No. 10-6235 (KM)(MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Hartford Casualty Insurance Company ("Hartford") brings this action pursuant to 28 U.S.C. § 2201, seeking a declaration that Defendant Peerless Insurance Company and The Netherlands Insurance Company (collectively, "Peerless") contribute defense costs and indemnity in connection with the defense of their mutual insured, Carquest Corporation ("Carquest"), in a personal injury lawsuit. (ECF. No. 1) Peerless brings counterclaims for breach of contract, breach of fiduciary duty, and negligence. (ECF No. 28) Hartford's claim and Peerless's counterclaims come before the Court on cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 155 and 158)

Hartford contends that there is no dispute that Peerless was Carquest's primary insurer and that Hartford is entitled to contribution for reasonable defense and settlement costs. To some degree, I find that Hartford is entitled to prevail on its contentions. Peerless argues that Hartford held itself out as Carquest's primary insurer and, while it controlled Carquest's defense, botched it so completely the Court should deny Hartford's contribution claim.

Indeed, Peerless says, it has been so prejudiced by Hartford's bungling that the Court should award Peerless summary judgment on its counterclaims and force Hartford to indemnify Peerless. I find that Peerless has not established that it is entitled to summary judgment. For the reasons detailed below, summary judgment is GRANTED in part and DENIED in part to Hartford, and DENIED to Peerless.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## A. The Underlying Action

### 1. The Trouble Light

On July 3, 2007, John Michael Mechin, a 21-year-old car mechanic, suffered second and third degree burns over 42% of his body as a result of an accident that occurred while he was working at an auto repair shop.[1] (Pl. Ex. 1, p. 2; Def. Ex. A, ¶ 12) As he was working, a gasoline tank fell,

---

1 Citations to the record will be abbreviated as follows:

"Pl. Br." — Plaintiff's Brief in Support of its Motion for Summary Judgment, ECF No. 155.

"Def. Opp. Br." — Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, ECF. No. 169-1.

"Pl. Reply Br." — Plaintiff's Reply Brief to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 170.

"Def. Br." — Defendant's Brief in Support of its Motion for Summary Judgment, ECF No. 161.

"Pl. Opp. Br." — Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, ECF No. 164.

"Def. Reply Br." — Defendant's Reply Brief to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, ECF No. 172-1.

"Pl. Ex." — Plaintiff's Exhibits to the Certifications of Gerald D. Wixted, dated October 6, 2014, November 5, 2014, and November 19, 2014, submitted in Support of Plaintiff's Motion for Summary Judgment, Plaintiff's Opposition to Defendants' Motion for Summary Judgment, and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF nos. 155, 156, 164, 170.

"Def. Ex." — Defendant's Exhibits, attached to the Certification and Supplemental Certification of John T. Coyne, dated October 6, 2014, November 5, 2014, submitted in support of Defendant's Motion for Summary Judgment and Defendant's Opposition to Plaintiff's Motion for Summary Judgment, ECF nos. 158, 161, 169.

"PSF" — Plaintiff's Statement of Material Undisputed Facts, ECF No. 156-1.

spilling gasoline on the floor and Mechin's clothes. (*Id.*) The gasoline then came into contact with a product known as the "Professional-Duty Trouble Light on Reel" (hereinafter, "Trouble Light"). (*Id.*) The Trouble Light ignited the gasoline and set Mechin on fire. (*Id.*) Mechin was in a coma for four weeks, and underwent several skin graft surgeries. He has permanent scarring on his neck, upper extremities, torso, and hands. (Pl. Ex. 1, p. 2)

### 2. The *Mechin* Defendants and Their Insurers

In December 2007, Mechin filed a product liability lawsuit against Carquest, which allegedly had manufactured, designed, distributed, or marketed the Trouble Light. (Pl. Ex. 2, ¶ 1) In April 2008, Mechin amended his complaint to include defendants Carquest Products, Inc. ("CPI"), BWP Distributors, Inc. ("BWP"), and Voltec Industries, Inc. ("Voltec") (collectively, the "Carquest Entities"), and alleged that each had manufactured, designed, distributed or marketed the Trouble Light. (Pl. Ex. 3, ¶¶ 4-5)[2]

The precise relationship between Carquest, CPI, and BPW is unclear, and the extent to which each was involved in the manufacture, design, distribution or marketing of the Trouble Light is disputed. (*See, e.g.*, DSMF ¶ 3; PRDSMF ¶ 3; DSMF ¶¶ 24, 26-31, PRDSMF ¶¶ 24, 26-31) Nevertheless, certain essential facts concerning the *Mechin* defendants can be stated as follows:

---

"DRPSF" — Defendant's Reply to Plaintiff's Statement of Material Undisputed Facts, ECF No. 169-2

"DSF" — Defendant's Statement of Material Undisputed Facts, ECF No. 161.

"PRDSF" — Plaintiff's Reply to Defendant's Statement of Material Undisputed Facts, ECF No. 164-1

"PCDSF" — Plaintiff's Counter-Statement of Facts to Defendant's Statement of Material Undisputed Facts, ECF No. 164-1

"DRPRDSF" — Defendant's Response to Plaintiff's Reply to Defendant's Statement of Material Undisputed Facts, ECF No. 172-2

"DRPCDSF" — Defendant's Response to Plaintiff's Counter-Statement of Facts to Plaintiff's Statement of Material Undisputed Facts, ECF No. 172-2

[2] Mechin also added defendants TMC Enterprises, Inc. ("TMC") and Tasco Industries, Inc., and alleged the same. (*Id.*) Tasco imported the Trouble Light into the United States. (DSF ¶ 3, PRDSF ¶ 3)

**Voltec** is a distribution and supply company which purchased the Trouble Light from the product's Chinese manufacturers. Voltec is insured by Hartford under two policies: (1) a General Commercial Liability Policy with a limit of $2,000,000 and (2) an Umbrella Policy with a limit of $2,000,000. (DSF ¶ 4; PRDSF ¶ 4)

**CPI**, a national distributor of "Carquest" brand products, purchased the Trouble Light from Voltec. CPI is owned by four "member" companies, which include Carquest and BWP. (Def. Ex. II, 13:12-15:10; Coyne Cert Ex. HH; Pl. Ex. 22, p.1). CPI is insured by Universal Underwriters Insurance Company ("UUIC").

**BWP**, a regional distributor of "Carquest" brand products, purchased the Trouble Light from CPI and allegedly sold it to the auto repair shop where Mechin worked. (Def. Ex. B, 59:19-21; Pl. Ex. 22, p.1) As noted above, BWP is an owner-member of CPI. (Def. Ex. II, 13:12-15:10; Pl. Ex. 22, p.1) BWP is insured by Zurich American Insurance Company ("Zurich").

**Carquest**, the owner of the trademark "Carquest", is also owned by "member" companies, one of which is BWP. (Def. Ex. B, 18:9-17; Def. Ex. D, 16:15-19:4) Carquest licenses its trademark to its member companies, who in turn use it to sell "Carquest" brand products. (*See id.*) Carquest is insured by Peerless. Whether Carquest played any role in the marketing or advertising of the Trouble Light is hotly contested. (DSF ¶¶24-31, PRDSF ¶¶ 24-31)

### 3. The Voltec-CPI Agreement

In a March 2002 agreement (the "Voltec Agreement"), Voltec added CPI, BWP, and Carquest to its insurance and agreed to provide indemnity for "any claim, demand, legal actions or judgment based upon or arising out of . . . any alleged or actual defects of any kind of design, manufacture, preparation, or handling of the products; provided that [Voltec] shall not be liable for gross negligence or willful misconduct." (PSF ¶ 8, DRPSF ¶ 8) The Agreement does

not state whether Voltec's Hartford insurance is primary or non-contributory. (Pl. Ex. 9, §§ 2.1, 2.4).

**4. The Carquest Entities Request Defense**

Shortly after Mechin filed his complaint, Carquest requested that Hartford defend and indemnify it against Mechin's claims. (PSF ¶¶ 9-10; DRPSF ¶¶ 9-10) On April 3, 2009, Hartford accepted tender of Carquest and CPI's defense subject to a reservation of rights which would have allowed Hartford to disclaim coverage if it emerged that the Trouble Light was not imported or distributed by Voltec. (Def. Ex. N) In a second letter, dated April 17, 2009, Hartford agreed to accept the tenders of Carquest, BWP, and CPI as additional insureds, subject to the existing terms and conditions contained in Voltec's insurance policies. (Def. Ex. O)

When Hartford accepted the defense of the Carquest Entities in April 2009, it was already providing for the defense of Voltec. (Def. Ex. U, p.2) Hartford then believed that Voltec and the Carquest Entities' interests were aligned because they all were "innocent sellers" under New Jersey products liability law (*i.e.*, each defendant was a mere seller who did not exercise some significant control over the design, manufacture, packaging or labeling of the Trouble Light). Hartford therefore assigned Voltec's lawyer, Thomas Mulcahy, to represent all four of these defendants jointly. (Def. Ex. U, p. 2, 5; Pl. Ex. 24, p. 214:1-215:22) The hope was that each of these defendants could pass liability up the chain of distribution to the Trouble Light's foreign manufacturer and domestic importer. (Def. Ex. U, p.5)

In the spring of 2010, the joint representation of Voltec and the Carquest Entities hit a snag: discovery revealed that the Trouble Light was approved only for "general use" even though it had been branded "Professional-Duty" and marketed to commercial auto garages. (Pl. Ex. 25, p.9; Def. Ex. P, 113:12-116:20). Allegedly concerned by a potential conflict of interest between Voltec and the Carquest Entities, Hartford severed the joint representation and appointed new attorneys for Voltec and the Carquest Entities. (PSF ¶¶ 37-38,

DRSF ¶¶ 37-38). John Maucher, Esq., was appointed to handle the Carquest Entities' defense. (*Id.*)

### 5. Settlement and Indemnification

By September 2010, Mechin's theory of the case had crystalized: the fire occurred because the Trouble Light was improperly labeled as "Professional-Duty" and marketed to commercial auto garages. (Pl. Ex. 12, p. 3-4; Pl. Ex. 13, p. 6; Pl. Ex. 14). Maucher advised Hartford, Peerless, Zurich, and UUIC in November 2010 that Mechin's settlement demand was $9 million, and that he believed it would take between $4 million and $5 million to settle the case. (Def. Ex. 1, p. 3)

On March 15, 2011, the Carquest Entities (as well as Voltec) moved for summary judgment on their innocent seller defense. Mechin moved for summary judgement on the issues of design defect, failure to warn, and proximate cause. (Pl. Ex. 16-17)[3] While the summary judgment motions were pending, Voltec settled with Mechin for $900,000, paid entirely by Hartford. (DSF ¶ 22; PRDSF ¶ 22; DRPRDSF ¶ 22; PCDSF ¶ 51, DRPCDSF ¶ 51) The Carquest Entities settled for $2,050,000, of which $1,100,000 was paid by Hartford. (DSF ¶ 22; PRDSF ¶ 22; DRPRDSF ¶ 22) Zurich, Peerless, and UUIC each contributed $316,667. (*Id.*)[4]

On July 15, 2011, Maucher moved on behalf of Carquest, BWP, and CPI for summary judgment on their claims for indemnity based on the Voltec Agreement. (Pl. Ex. 34). Judge Wigenton, who presided over Mechin's action, denied that motion in February 2012. (Pl. Ex. 35) Because the

---

3 In April 2010, Mechin sought sanctions on the ground that the Carquest Entities' innocent seller defenses were frivolous and asserted in bad faith. He argued that the foreign manufacturer of the Trouble Light had neither a presence nor attachable assets in the United States—the only circumstance in which a defendant can avail itself of the defense—and counsel's suggestions otherwise were contrary to earlier representations to the court. (Pl. Ex. 18) The court never ruled on that motion.

4 In total, the Mechin action settled for $4,700,000. Tasco settled for $1,750,000. (Pl. Br. 7; DSF ¶ 17).

Agreement failed to state in clear and unequivocal terms that Voltec would indemnify the Carquest Entities for their own negligence, Judge Wigenton ruled that the Agreement was invalid and unenforceable. (Pl. Ex. 35, p. 9-12)[5]

**B. This Action**

In November 2010—shortly after Maucher advised the insurers that it would cost $4–5 million to settle the *Mechin* case—Hartford informed Peerless, Zurich, and UUIC that they might be obligated to provide co-excess, if not primary, coverage to their insureds. Hartford's position was based on the "other insurance" clause in Voltec's Hartford policy. That clause states:

> This insurance is excess over any of the other insurance whether primary, excess, contingent or on any other basis:
>
> ****
>
> **(7) When You Add Others As An Additional Insured To This Insurance**
>
> That is other insurance available to an additional insured.
>
> However, the following provisions apply to other insurance available to any person or organization who is an additional insured under this Coverage part.
>
> **(a) Primary Insurance When Required By Contract**
>
> This insurance is primary if you have agreed in a written contract, written agreement or permit that this insurance will be primary . . . .
>
> **(b) Primary and Non-Contributory to Other Insurance When Required By Contract**
>
> If you have agreed in a written contract, written agreement or permit that this insurance is primary and non-contributory with the additional insured's own insurance, this insurance is primary and we will not seek contribution from that other insurance.

(Pl. Ex. 7-8, Pl. Ex. 4, HARTVOLT100079-80)

---

5 Judge Wigenton also found that Hartford was not part of the Agreement and could not have legally bound Voltec to indemnify Carquest's negligence. (Pl. Ex. 35, p. 8)

Hartford, as the Carquest Entities' insurer, filed the present action in December 2010. This action seeks contribution for defense costs and indemnity ($1,100,000) from Peerless, Zurich, and UUIC. (ECF No. 1) In August 2011, Peerless, Zurich, and UUIC filed counterclaims against Hartford for breach of contract, breach of fiduciary duty, and negligence. (ECF Nos. 27-28) Fact discovery closed in 2012; the deadline for expert discovery lapsed in 2014. No party produced an expert report.

The parties cross-moved for summary judgment on their claims and counterclaims in October 2014. (ECF No. 155-173). Zurich and UUIC were dismissed in December 2014 after reaching a settlement with Hartford. (ECF No. 175) Only Hartford and Peerless's motions for summary judgment remain.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

When the parties file cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Philadelphia Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir.1994). That one of the cross-motions is denied does not imply that the other must be granted. For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility

determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

## III. ANALYSIS

The claims as to which summary judgment is sought break down into four major categories:

(A) Hartford's claim that its policy is excess and Peerless is liable for contribution;

(B) Peerless's counterclaim that Hartford breached insurance contracts under which Carquest was an additional insured;

(C) Peerless's counterclaim that Hartford breached its duty to defend Carquest;

(D) Peerless's counterclaim that Hartford was negligent in its control and management of the defense.[6]

The following discussion is organized accordingly.

### A. Hartford's Contribution Claim

#### 1. The Other-Insurance Clause

Hartford requests that this Court declare its policy with Voltec to be excess, and allow it to recoup from Peerless the money paid to defend and settle the *Mechin* action on behalf of Peerless's insured, Carquest. (Pl. Br. 2, 32) There is no genuine dispute that Hartford is excess, and Peerless primary: (1) the Voltec Agreement does not require that the insurance coverage to be procured by Voltec be primary or non-contributory and (2) the Hartford and Peerless policies both provide in straightforward terms that Peerless has a primary obligation to insure Carquest. Peerless raises no genuine issue of

6 In the briefs, it is not always clear which theory Peerless is invoking. For the sake of completeness, I have considered all the theories Peerless asserts in its counterclaim.

material fact as to either of those propositions; indeed, it essentially concedes that, in this regard, the policies mean what they say. (PSF ¶¶ 10-13; DRPSF ¶¶10-13)[7] I therefore find that Hartford's policy is excess to Peerless's policy.

### 2. Estoppel

Peerless instead argues that Hartford should be estopped from enforcing the other insurance clause and asserting a contribution claim against it. Peerless contends that Hartford should have reserved its rights to dispute its insurance obligations when it accepted the defense of Carquest, but failed to do so. As a result, says Peerless, Harford is now estopped from denying that it was Carquest's primary insurer, and cannot be permitted to recover defense and settlement costs from Peerless. *See Merchants Ind. Corp. v. Eggleston*, 37 N.J. 114 (1962). Peerless's argument suffers from three defects.

First, Peerless cites to no New Jersey case—and the Court has found none—which holds that an insurer must reserve the right to seek contribution from another insurer when it accepts the defense of an insured, on pain of estoppel.[8] To the contrary, it is well-settled that an insurer may

---

7 Hartford's policy states that its insurance is excess if Voltec adds an additional insured and fails to agree, in a written contract, that the insurance is primary and/or non-contributory. (Pl. Ex. 4, HARTVOLT100079-80). Voltec added Carquest as an additional insured, but the Agreement does not require the insurance to be primary and/or non-contributory. (Pl. Ex. 9, §§ 2.1, 2.4)

On the other hand, the Peerless policy states that it is primary except when "other primary insurance is available for which the insured has been added by attachment of an endorsement." (Pl. Ex. 10, P. 0221) But there is no "other primary insurance" available—the Hartford policy coverage is excess by its terms. *See Jeffery Brown Assoc., v. Interstate Fire & Cas. Co.*, 44 N.J. Super. 160, 167-68 (App. Div. 2010) (enforcing an "excess-other insurance clause" against an additional insured where the additional insured coverage a subcontractor provided a general contractor was "excess" to any other coverage available to the general contractor under the terms of the subcontractor's policy, and the general contractor's coverage was "primary" under the terms of its policy, unless it had "other primary insurance available", which it did not have under the "excess-other insurance" clause of the subcontractor's policy). Peerless was not added as an additional insured by attachment of an endorsement, and does not claim that it was. (Pl. Br. 21)

8 At the end of a string cite and without explanation, Peerless vaguely refers to *Hartford v. Accident & Indemnity Co. v. Ambassador Ins. Co.*, which ruled, *inter alia*, that a defending insurer was entitled to reimbursement for settlement and defense costs from a non-paying insurer because the non-paying insurer knew that the insured was an additional insured

routinely seek contribution for reasonable settlement and defense costs from a co-insurer. *See Potomac Ins. Co. v. Pa. Mfg. Assoc. Ins. Co.*, 215 N.J. 409, 422-29 (2013); ("[T]he allocation of defense costs among all insurers that cover the risk, enforced by a right of contribution between the co-insurers of the common insured, serves the principle of fairness . . . As this case illustrates, an insurer that refuses to share the burden of a policyholder's defense is rewarded for its recalcitrance, at its co-insurer's expense, unless the insurer who pays more than its share of the costs has an effective remedy.") (internal citations omitted); *Jefferson Ins. Co. v. Health Care Ins. Exch.*, 247 N.J. Super. 241. 246-48 (App. Div. 1991) ("[T]he equitable principle of contribution should be available to an insurer paying a debt which is equally owed by . . . other insurers . . .") (internal citations omitted); *Cosmopolitan Mut. Ins. Co. v. Cont'l Cas. Co.,* 28 N.J. 554, 557-558 (1959). An insurer may do so even after the other insurer has been released by the insured. *Potomac*, 215 N.J. at 430.

Second, this is a dispute between insurers, not a case in which an insurer has withdrawn from the defense and left the insured to fend for itself. There is no evidence that Hartford ever disclaimed or denied a defense to Carquest.[9]

Third, the central rationale of the *Eggleston* rule (*i.e.*, that it is unfair to allow an insurer to disclaim coverage based on a limitation to which the insured never consented) does not apply here. Here, a non-defending primary insurer seeks to estop a defending insurer's claim for contribution. It is true that there are at least two unpublished New Jersey cases in which an insurer was permitted to estop an another insurer from denying coverage and

under its policy. 163 N.J. Super. 250, 255-57 (App. Div. 1978). *Ambassador* does not hold generally that an insurer is required to reserve rights and provide notice of its intent to seek contribution against another insurer.

9 *See, e.g.*, Pl. Ex. 46 ("The Hartford has not and will not in any way retreat from its obligation to defend and indemnify the Carquest entities as additional insureds."); Pl. Ex. 47 ("As a preliminary matter, please note that Hartford is not "reneging" or withdrawing from the defense of the Carquest entities."); Def. Br. 27 ("There is no dispute that from April 2009 onward, Hartford controlled the defense of the Carquest Corporation, CPI, and BWP.").

withdrawing from the defense of a mutual insured.[10] *See Nazario v. Lobster House*, No. L-159-05, L-304-05, L-171-06, 2009 WL 1181620 at *4-5 (N.J. Super. Ct. App. Div. May 5, 2009); *Selective Ins. Co. v. Allstate Ins. Co.*, L-2159-01, 2005 WL 3839975 at *7-8 (N.J. Super. Ct. App. Div. Mar. 10, 2006).[11] But even assuming, as Peerless suggests, that Hartford violated the *Eggleston* rule by notifying Peerless that it, in fact, was Carquest's primary insurer, it does not

---

10 In a third case cited by Peerless, Judge Irenas ruled that an insurer had standing to assert another insurer's failure to reserve its rights to disclaim and withdraw. *Mazzoli v. Marina Dist. Dev. Co.*, No. 08-649, 2011 WL 1362128, at *3-5 (D.N.J. Apr. 11, 2011) But because the disclaiming insurer was permitted to withdraw coverage, the court did not pass upon the question presented here. *Id.*

To be sure, the court noted, "[i]t is clear in certain instances, an insurer will have exerted so much control over a case that allowing it to disclaim coverage would be prejudicial to both the insured and other insurers of the insured." But Judge Irenas also ruled that a presumption of prejudice is inappropriate in a case involving co-insurers, because "there is no reason to presume that control of claim by a co-insurer is a 'material encroachment upon the rights' of an insurer, nor must we presume that there is a resultant inequity'. *Id.* at 4.

I agree, and this case illustrates the reason: "Often, the interests of co-insurers will be aligned." *Id.* As detailed below, there are genuine issues of material fact as to whether Hartford and Peerless's interests were ever in conflict, and if so, whether Peerless suffered actual prejudice as a result. Hartford and Peerless, for example, shared an interest in escaping from all liability as "innocent sellers." In other words, the adversity of interests between co-insurers is not as obviously acute as when an insurer strips an insured of its right to make an informed decision to accept the insurer's defense or go it alone.

11 Other courts that have considered the issue have ruled that the benefit of consent-or-estoppel rules inure to the insured, not the insurer. *See, e.g., St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 207-208 (5th Cir. 1996) (Texas law) ("Landmark and Lexington cite no authority for the proposition that an insurer must reserve its rights vis à vis another *insurer* when it assumed the defense of an insured . . . [T]his exception is specifically intended to protect the *insured* for reasons that simply do not apply to other insurers . . . A number of cases indicate or suggest that the rule is also justified by the fact that insured is deprived of the right to completely control his defense; some of these cases further suggest that this situation is inherently prejudicial to in insured in the absence of a reservation of rights.") (emphasis in original); *Alliance General Ins. Co. v. The Ins. Co. of the State of Pa.*, 134 F.3d 362 (Table) (4th Cir.1998) (Minnesota law) ("The estoppel rule is to protect the insured once she has given up all control of her defense in the lawsuit, and as such does not apply between insurers."); *Kitchnefsky v. Nat'l Rent-A-Fence of Am., Inc.*, 88 F.Supp.2d 360, 364-65 (D.N.J. 2000) (New Jersey law) ("[T]he party seeking to invoke estoppel in the instant case is not the insured, but rather the primary insurer. Extending [*Griggs v. Bertram*, 88 N.J. 347 (1982)] protection to a primary insurer would ignore the rationale of the supreme court's decision, which focused on the insured's need for protection.") *Am. Gen. Fire and Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, (N.M.1990) ("The [estoppel] rule does not operate to preclude a suit such as this whereby one insurer attempts to assert that another insurer provided primary coverage."); *Western Cas. and Surety Co. v. Am. Nat'l Fire Ins. Co.*, 318 N.W.2d 126 (S.D.1982) ("Only the parties to the contract of insurance, or their privies, can claim the benefit of a waiver or estoppel")).

follow from either *Nazario* or *Selective* that Hartford should be estopped from seeking contribution from Peerless.[12] If that were the rule, any insurer that steps up to defend its insured, only to later discover that its co-insurers owed the insured a primary or co-extensive coverage obligation, "might alone bear a burden that should be shared." *Potomac*, 215 N.J. at 425-46.

In sum, *Eggleston* is not relevant in a case where, as here, each insurer claims that the other owes it money, but the non-defending insurer admits it owed a primary coverage obligation to the insured, and the defending insurer picked up the tab and never withdrew its defense.

Peerless also argues that Hartford should be estopped from recovering contribution because Hartford "impliedly conceded" that Voltec would indemnify the Carquest Entities under the indemnity provision contained in Voltec Agreement. (Def. Br. 30) In essence, Peerless seeks to re-litigate the motion for summary judgment for indemnification that it lost before Judge Wigenton. (*See* Def. Ex. 34) But here, as there, Peerless's argument suffers from an intractable problem: as a matter of law, the indemnity provision of the Voltec Agreement is invalid because it fails to state in "clear and unequivocal" terms that Voltec must indemnify the Carquest Entities for their own negligence. *See, e.g.*, *Norkus v. Gen. Motors Corp.*, 218 F. Supp. 398, 399 (S.D. Ind. 1963); *Mantilla v. NC Mall Assocs.*, 167 N.J. 262, 269-273 (2001). Simply put, any "implied concession" concerning the Voltec Agreement is irrelevant because Carquest could not (and cannot) enforce the indemnity provision against Voltec.[13] I therefore find Hartford is not estopped from seeking contribution from Peerless.

---

12 Indeed, the *Selective* court permitted the estopped insurer to recover contribution from the non-defending insurer. *Selective*, 2005 WL 3839975 at *8-9.

13 Peerless has two chief arguments to the contrary.

First, Peerless contends that the Voltec agreement did need not to expressly state that it covered negligence because the New Jersey Products Liability Act (PLA) imposes strict liability. *See* N.J. Stat. Ann. § 2A:58C-2 (West 2016). In support, Peerless points to a single case involving violations of the Comprehensive Environmental Response, Compensation, and Liability Act (better known as "CERCLA"). Setting aside the remote context, that court expressly

**3. Reasonableness of the *Mechin* Settlement**

Hartford is entitled to contribution for defense costs and indemnity from Peerless if the settlement it reached on Carquest's behalf was reasonable and entered into in good faith. *See Griggs*, 88 N.J. at 368; *Jefferson*, N.J. Super. at 248; ; *Fireman's Fund Ins. Co. v. Imbesi*, 361 N.J. Super. 359, 586 (App. Div. 2003). "The initial burden of going forward with proofs of these elements rests upon the insured and the ultimate burden of persuasion as to these elements is the responsibility of the insurer." *Griggs* at 368.[14] "The insurer bears the ultimate burden of persuasion by a preponderance of the evidence."

Hartford argues that the $2,050,000 the Carquest Entities paid to settle the *Mechin* action was reasonable, given Mechin's serious injuries,

---

*declined* to decide whether ambiguity in an indemnity agreement should be construed against the indemnitee where the indemnitee faces strict liability. 404 N.J. Super. 514, 529 (App. Div. 2009).

Second, Peerless argues that although the indemnification clause is ambiguous, there is a "reasonable likelihood" that parol evidence it might have obtained from Voltec witnesses would have resolved the ambiguity in its favor. (Def. Br. 30) But this is beside the point: an ambiguous indemnity agreement is an invalid indemnity agreement. *See, e.g., Englert v. Home Depot*, 389 N.J. Super 44, 58 (App. Div. 2006) ("Under prevailing law, an ambiguous contractual indemnification provision must be construed against the indemnitee."); *Henthorne v. Legacy Healthcare, Inc.*, 764 N.E.2d 751, 758 (Ind. Ct. App. 200) ("Such clauses indemnifying the indemnitee for the indemnitees own negligence are strictly construed and will not be held to provide indemnification unless stated in clear and unequivocal terms terms. . . . The indemnity clause here did in unambiguously express that [indemnitor] would defended and indemnify [indemnitee] for [indemnitee]'s own negligence. Without such an explicit provision, [indemnitor] is not responsible for costs and defenses and indemnification resulting from [indemnitee]'s own negligence.") (internal citations omitted)

[14] Hartford cites *Luria Bros. & Co v. Alliance Assurance Co.*, 780 F.2d 1082 (2d Cir. 1986), a Second Circuit case applying New York law, for the proposition that "Hartford's initial burden of production is a light one: it need only show that the settlement was reasonable and in good faith". (Pl. Reply Br. 7) This is not, as Hartford claims, a Third Circuit case, though the error is somewhat understandable; *Fireman's Fund*, 361 N.J. Super. at 586, which Hartford also cites in its opening brief, miscites *Luria* as a Third Circuit case. (Pl. Br. 23). At any rate, the case law is mixed on this point. *See Fireman's Fund* (ruling that settlement was unreasonable where insured offered two affidavits from practicing attorneys and insurer offered expert testimony of former the Chief Judge of the Third Circuit Court of Appeals); *Pasha v. Rosemount Memorial Park, Inc.*, 344 N.J. Super 350, (App. Div. 2001) (finding that insured failed to satisfy their initial burden of production even though insured offered expert testimony).

Mechin's focus on the Carquest Entities' culpability, and defense counsel's estimation that a jury verdict could exceed $15,000,000. (Pl. Ex. 1, 17 43, 45).

By contrast, Peerless argues that the settlement was unreasonable because Carquest had an "ironclad defense" unique to itself: that Carquest was not in the chain of distribution and should have been dismissed from the *Mechin* action. (Def. Br. 5, 37-38).[15] The $316,667 Peerless paid on behalf of Carquest was not reasonable, so it says, because competent counsel would not have whiffed on securing Carquest's dismissal scot-free. Peerless argues that the evidence is so overwhelming and Carquest's entitlement to dismissal so clear that expert testimony on Mulcahy and Maucher's defense strategy and the reasonableness of the settlement negotiated is not required. (Def. Opp. Br. 3; Pl. Opp. Br. 27)

The truth is, however, that the record is muddled as to the precise relationship between Carquest, BPW, and CPI, and their respective roles in the marketing and labeling of the Trouble Light. Neither party has submitted an expert report addressing the likelihood that Carquest would have obtained a stipulated dismissal or prevailed on a dispositive motion had counsel asserted the arguments that Peerless now claims were obvious. To the contrary, there is significant evidence in the record that Hartford's claims adjusters and Carquest's defense counsel repeatedly and consistently expressed confusion concerning the relationship between Carquest, BWP and CPI, and what exactly each company did or did not do with respect to the distribution of the Trouble Light.[16] To the extent the record of the underlying action is sloppy, however, I

---

15 Peerless primarily points to a trio of witnesses—two lawyers and corporate officer of a subsidiary of BWP—who testified that Carquest played no role in the labeling, marketing, or advertising of the trouble light. (*See, e.g.*, Def. Ex. D, 263:25-264:17) None of the three is a Carquest employee or officer.

16 *See e.g.*, Def. Ex. P, 29:20-30:5 ("I am still not 100% sure what their role was with respect to the distribution of the drop light. In the beginning we had no idea . . ."); Def. Ex. FF, 65:10-24 ("This claim was in litigation for well over a year by the time I got it . . . I kept endeavoring to find out the roles of the various parties; Nobody seemed to want to tell me that . . . I don't know what the roles are today."); Pl. Ex. 22 ("Testimony was that certain functions like catalog production or advertising moved CPA to Carquest or vice versa and employees like Jay King and Dick Egan were Carquest or CPI employees at one time and then transferred to

agree that Hartford, who controlled Carquest's defense, should not benefit from the confusion. So, construing all facts and inferences in favor of Peerless, I find there is a genuine dispute of material fact as to whether the *Mechin* settlement as applied to Carquest was reasonable.

**B. Peerless's Breach of Contract Counterclaim**

At times, Peerless seems to suggest that Hartford bound Voltec to a contractual obligation to indemnify Carquest under the Voltec Agreement and then breached the Agreement when it failed to accept the defense of Carquest as an insured under the indemnity provision of the Agreement. (Def. Br. 6, 30 ("The proverbial elephant in the room remains the contractual indemnity claim. In its words and through its actions, Hartford unquestionably manifested its conclusion that the contractual indemnity clause was appropriate . . . If Hartford is forced to stand by its prior position, the additional insurance coverage dispute would be moot.") For reasons similar to those noted above, I will deny Hartford's motion for summary judgment (to the extent it has asked for it) on breach of contract.

There are two legal issues with this counterclaim. First, as noted above, the indemnity provision contained in the Voltec Agreement, as Judge Wigenton held, was unenforceable as a matter of law. Second, even assuming that Hartford did manifest an intent to defend and indemnify Carquest under the Agreement's indemnity clause, Hartford was not a party to the Voltec

the other. It seems like these corporations were interconnected and interchangeable in many respects. A jury will view all three of my clients as one entity I believe."); Pl. Ex. 22 ("Undisputed that 'Professional Duty' was coined by a Carquest person – but unknown who, when, why that phrase was first coined. As stated previously, the 2000 catalog (which pre-dates Voltec and TMC's involvement with the product line) contains the phrase 'Professional Duty' and my clients all testified that they actively sought the commercial garage market for such products as the trouble light reel."); Pl. Ex. 23 ("[M]ost witnesses refer simply to 'Carquest' as the manufacturer (yes, believe it or not), advertising, marketing, etc., Plus, some witnesses worked interchangeably for Carquest Corp. and CPI and used those companies interchangeably.") The Carquest Entities themselves recognized the confusion. In an email thread concerning who would sign the final release on behalf of Carquest, BWP, and CPI after the Mechin action settled, a BWP representative noted: "I think that we would be better off having three different signatures. No one ever believes that were separate companies and having one person sign for all three will only serve to further confuse matters in the future." (Pl. Ex. 84).

Agreement and therefore could not have bound Voltec to do the same. (Pl. Ex. 35, p. 8) These issues aside, there is a third problem with the premise of Peerless's legal arguments: there is a genuine issue of material fact as to whether Hartford expressed an intention or willingness to indemnify and defend Carquest pursuant to the Voltec Agreement's indemnity clause. (DSF ¶¶ 11-17; PRDSF ¶¶ 11-17). Peerless's motion for summary judgment on breach of contract is therefore denied.

### C. Peerless's Breach of Duty to Defend Counterclaim

Citing *Wolpaw v. General Acc. Ins. Co.*, 272 N.J. Super. 41 (App. Div. 1994), Peerless argues that Hartford breached its duty to defend Carquest by assigning a single lawyer to represent Carquest, BWP, and CPI. (Def. Br. 33) Specifically, Peerless contends that Hartford failed to honor its duty to defend Carquest because "a zealous defense of Carquest Corporation . . . would have involved advising the Court that (a) Carquest Corporation, unlike CPI and BWP, was not in the chain of distribution of the product and (b) Carquest Corporation, unlike CPI and BWP, did not participate in any marketing of the product." (*Id.*) Since it was in Carquest's interest to limit its share of liability, and one way to do that was to throw BWP and CPI under the bus, Peerless claims that Hartford should have appointed Carquest separate counsel. (Def. Br. 33-36) As noted above, however, there is a bevy of genuine issues of material fact concerning whether Carquest was actually in the chain of distribution of the Trouble Light, or had interests that conflicted with those of BWP or CPI. In sum, whether Carquest's interests were "clearly in conflict" with BWP and CPI's interests cannot be determined on this record on summary judgment. *Wolpaw*, 272 N.J. Super at 45. Peerless's motion for summary judgment on the breach of the duty to defend is therefore denied.

### D. Peerless's Negligence Counterclaim

In its counterclaim, Peerless alleges that "Hartford was negligent in its control and management of the defense of the claims against Carquest."

This claim depends on the resolution of the genuine issues of material fact concerning Carquest's location in the chain of distribution and the reasonableness of the settlement of the *Mechin* action as applied to Carquest. (ECF. No. 5). Peerless motion for summary judgment on its negligence counterclaim is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Hartford's motion for summary judgment (ECF no. 155) is GRANTED in part and DENIED in part, and Peerless's motion for summary judgment (ECF No. 158) is DENIED.

Dated: September 30, 2016

**KEVIN MCNULTY**
**United States District Judge**